IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 12-01105-TUC-CKJ (HCE) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Clinton Duane Bonds, | |
| Defendant. | |

Pending before the Court are Defendant's Motion To Suppress (4th Amendment Illegal Search and Seizure) (Doc. 28) and Motion To Suppress (5th Amendment, *Miranda* Violation) (Doc. 29).[1] In response to both of Defendant's motions, the Government filed a Response To Defense Motion To Suppress (Doc. 40). Defendant filed a supplemental Motion To Suppress (4th Amendment Illegal Search and Seizure) (Doc. 48)[2]. The Government filed a Supplemental Response To Defense Motion To Suppress. (Doc. 56).

Defendant's motions came on for hearing on August 22, 2012. Called to testify on behalf of the Government were Border Patrol Agent (Hereinafter "BPA") Daniel Sturkie (hereinafter "Sturkie at p. _") and BPA Frank Agudio (hereinafter "Agudio at p. _"). A

---

[1]Both motions were filed by previous defense counsel, Mr. John Kaufmann.

[2]Counsel Mr. John Kaufmann was relieved of further representation on June 11, 2012, and Mr. Brick Storts was subsequently appointed (Doc. 31). Thereafter, Mr Ramiro Flores was retained and substituted as counsel for Defendant by order of the Court. (Doc. 41). Counsel Mr. Ramiro Flores was given leave to supplement Defendant's previously filed motions and the Government was given leave to respond to such supplements. (Doc. 44)

1  transcript of the suppression hearing was ordered, filed on August 23, 2012 (Doc. 62), and
2  is forwarded to the District Court for consideration.

3  At the hearing, the Government advised that it will not introduce in its case-in-chief,
4  evidence of marijuana residue found in a Nissan in which Defendant was a backseat
5  passenger, nor statements by Defendant without benefit of *Miranda* warnings that he and the
6  other occupants of the Nissan had smoked marijuana earlier in the day. (August 22, 2012
7  Hearing at pp. 3-4). Therefore, the Magistrate Judge recommends that the District Court
8  deny Defendant's Motion To Suppress (5th Amendment, *Miranda* Violation) (Doc. 29) as
9  moot.

10  The only issue presented to this Court at the evidentiary hearing was the question of
11  suppression of 573 Oxycodone pills as addressed in Defendant's Motion To Suppress (4th
12  Amendment Illegal Search and Seizure) (Doc. 28) and Defendant's supplemental Motion to
13  Suppress (4th Amendment Illegal Search and Seizure) (Doc. 48). After review of Defendant's
14  Motion To Suppress (4th Amendment Illegal Search and Seizure) (Doc. 28) and Defendant's
15  supplemental Motion To Suppress (4th Amendment Illegal Search and Seizure) (Doc. 48);
16  the Government's Response To Defense Motion To Suppress (Doc. 40) and Supplemental
17  Response To Defense Motion To Suppress (Doc. 56); testimony and argument of respective
18  counsel, the Magistrate Judge recommends that the District Court deny Defendant's Motion
19  To Suppress (4th Amendment Illegal Search and Seizure ) (Doc. 28) and Defendant's
20  supplemental Motion To Suppress (4th Amendment Illegal Search and Seizure) (Doc. 48).

21  **I. PROCEDURAL AND FACTUAL BACKGROUND**

22  **A.  Indictment**

23  Defendant is charged with having, on or about April 27, 2012, at or near Whetstone,
24  in the District of Arizona, knowingly and intentionally possessed with the intent to distribute
25  573 pills of Oxycodone, a Schedule II controlled substance, in violation of Title 21
26  U.S.C.§§841(a)(1) and 841(b)(1)(C).

27  **B.  Facts**

28  It was a cold and windy night on April 27, 2012 at approximately 9:10 p.m. when a

1 gold 4-door 2003 Nissan Sentra (hereinafter "Nissan") stopped for primary inspection at a
2 Border Patrol checkpoint on State Highway 90 near Whetstone, Arizona. (Sturkie at pp. 7,
3 10; Agudio at pp. 10, 23, 24, 25, 28, 51, 52). Ms. Anne Rascon (hereinafter "Rascon") was
4 the driver and registered owner of the vehicle. (Sturkie at p. 8). Seated in the front passenger
5 seat was a male, Mr. Darryl Taylor (hereinafter "Taylor"). (Sturkie at pp. 11-12, Agudio at
6 p. 31; *see also* Defendant's supplemental Motion To Suppress (4th Amendment Illegal Search
7 and Seizure) (Doc. 48), p.2). Seated in the back seat behind the driver was Defendant.
8 (Sturkie at p. 10; Agudio at p. 26).

9       BPA Sturkie and his canine "Brawny"[3] were positioned at pre-primary when the
10 Nissan passed them as it approached primary inspection. (*Id.* at p. 7). The canine responded
11 to the presence of controlled substances or persons by exhibiting a change in body posture
12 and increased respiration. (*Id.* at pp. 7-8). BPA Sturkie indicated to BPA St. Louis to divert
13 the Nissan to secondary where BPA Agudio was located. (*Id.*). BPA Sturkie followed the
14 Nissan to secondary, with the Nissan arriving there just before he did. (*Id.* at p. 8). BPA
15 Agudio asked Rascon, Taylor and Defendant to step out of the Nissan. (*Id.*). BPA Sturkie
16 then informed the three that they had been directed to secondary because his canine alerted
17 to odor emitting from the Nissan and the canine is trained to detect "concealed humans and
18 the odors of narcotics." (*Id.*). The three occupants were asked if there were narcotics in the
19 Nissan to which they stated that there was not. (*Id.*). BPA Sturkie asked for and received
20 consent from Rascon to search the vehicle. (*Id.* at pp 8-9; Agudio at p. 25).

21       A thorough search of the vehicle, including the trunk, was conducted over five
22 minutes. (*Id.* at pp. 15-17). BPA Agudio came across a pair of folded jeans on the back seat
23 where Defendant had been sitting. (Agudio at p. 27). He checked every pocket and patted
24 down the jeans and found them void of any item. (*Id.*). BPAs Agudio and Sturkie noticed

---

26       [3]Transcription of BPA Sturkie's testimony indicates the name phonetically as
27 "Brawny", while the Government's Response To Defense Motion To Suppress indicates the
canine's name to be "Brandi". For purposes of this Report and recommendation, the drug
28 detection dog will be referred to simply as "canine".

- 3 -

1 the odor of burnt marijuana in the Nissan and both saw marijuana residue, commonly
2 referred to as "shake" on the Nissan's backseat floor. (*Id.* at pp. 27-28). There was an
3 insufficient amount of marijuana residue warranting a test. (*Id.* at p. 28). The three were
4 asked about the presence of marijuana and Defendant stated that they had smoked marijuana
5 earlier in the day. (*Id.*).

6       A records, immigration, criminal history, and warrants check (hereinafter "records
7 check") on the three and the Nissan was then run. (*Id.*; Sturkie at p. 10). While the records
8 check was being run, the three were allowed back into the Nissan because they had
9 complained about the cold. (*Id.*). Soon after the three got back into the Nissan, BPA Agudio
10 saw Defendant, who was in the backseat, drop a cigarette butt out a partially open window.
11 (Agudio at p. 28). BPA Agudio approached the driver-side back door next to where
12 Defendant was sitting, opened it, and asked Defendant to pick up the cigarette butt. (*Id.* at
13 pp. 28-29). Defendant responded "I'll get it later." (*Id.* at p. 29). Defendant's response
14 seemed odd to BPA Agudio since he was simply sitting in the vehicle. (*Id.*).

15       It was at this time that BPA Agudio saw Defendant attempting to conceal clear plastic
16 baggies[4] containing blue pills in the previously inspected folded jeans. (*Id.*). It appeared to
17 BPA Agudio that Defendant was trying to put the pills in the folds of the jeans rather than
18 in the pockets. (*Id.* at pp. 29, 30, 39, 41, 47, 48). BPA Agudio asked Defendant what he was
19 doing[5], Defendant then handed the jeans with the pills to Taylor, who was sitting in the front
20 passenger seat, at which time BPA Agudio asked Defendant to step out of the Nissan. (*Id.*
21 at pp. 29,30, 43-44, 47, 48). BPA Agudio is unclear whether he asked Taylor to give him the
22 jeans containing the pills but, in any event, Taylor handed the jeans to him. (*Id.* at pp. 29, 30,
23 48-49, 51, 53). Defendant, Rascon and Taylor were moved to a nearby bench at which time

---

[4] Based on BPA Agudio's training and experience, the pills were packaged for sale and would not be sold over the counter. (Agudio at pp. 31, 39).

[5] BPA Sturkie recalls BPA Agudio asking Defendant what he had in his hands. (BPA Sturkie at p.10).

- 4 -

1 Defendant volunteered to BPA Agudio that the blue pills were Oxycodone and that he had
2 a prescription[6] for them. (*Id.* at pp. 38, 52-53). No prescription bottles were found in the
3 Nissan, nor did Defendant, Rascon, or Taylor have a prescription or prescription bottle on
4 them. (Sturkie at p. 12; Agudio at p. 31).

5 Defendant was advised of his rights per *Miranda* and invoked his right to remain
6 silent and made no further statements. (Transcript, p.4; Agudio at p. 31).

7 **II. ANALYSIS**

8       **A.    Motion To Suppress (5th Amendment, *Miranda* Violation)**

9 At the hearing, the Government agreed that statements made by Defendant regarding
10 having smoked marijuana earlier on the day of his arrest, without advisement of *Miranda*,
11 would not be introduced in the Government's case-in-chief, thus rendering moot Defendant's
12 Motion To Suppress (5th Amendment, Miranda Violation) (Doc. 29).

13       **B.    Motion To Suppress (4th Amendment Illegal Search And Seizure)**

14           **1.    Abandonment**

15 The Government argues that Defendant lacks standing to challenge the search and
16 seizure because he abandoned the jeans wherein the pills were concealed. (Government's
17 Supplemental Response to Defense Motion to Suppress) (Doc. 56).

18 The Fourth Amendment does not protect abandoned property. *Abel v. United States*,
19 362 U.S. 217, 241 (1960). In order to have standing to challenge the admission of evidence
20 obtained in violation of the Fourth Amendment, a person must have a subjective and

21 _____

22 [6]"Any individual who has in his/her possession a controlled substance listed in schedule[] II, ... , which he/she has lawfully obtained for his/her personal medical use, ... ,
23 may enter or depart the United States with such substance, ... , provided the following
24 conditions are met: (a) *The controlled substance is in the original container in which it was dispensed to the individual*; and (b) The individual makes a declaration to an appropriate
25 official of the Bureau of Customs and Border Protection stating: (1) That the controlled substance is possessed for his/her personal use, ... ; and (2) The trade or chemical name and
26 the symbol designating the schedule of the controlled substance if it appears on the container
27 label, or, if such name does not appear on the label, the name and address of the pharmacy or practitioner who dispensed the substance and the prescription number." 21 C.F.R.
28 §1301.26(a), (b)(1) and (2). (emphasis added).

- 5 -

1 reasonable expectation of privacy in either the area searched or the evidence seized. *United States v. Struckmen*, 603 F.3d 731 (9th Cir. 2010); *United States v. Reyes-Bosque*, 596 F.3d 1017 (9th Cir. 2010). It is well and long-established that abandonment of property occurs when an individual relinquishes that reasonable expectation of privacy in property. *Abel*, 362 U.S. 217. Abandonment must be unequivocal. *United States v. Decoud*, 456 F.3d 996, 1007-08 (9th Cir. 2006)(warrantless search of briefcase valid because defendant unequivocally disclaimed ownership); *United States v. Bowman*, 215 F.3d 951, 963 (9th Cir. 2000) (warrantless seizure of trash in sealed bags put in front of home valid).

Generally, there are three types of abandonment: (1) a fleeing defendant who relinquishes an object to facilitate either his flight or his claim that he never possessed it, *see California v. Hodari D.*, 499 U.S. 621, 624 (1991); *Hester v. United States*, 265 U.S. 57, 58(1924); (2) a defendant places an object in or near a refuse receptacle readily accessible to the public, *see California v. Greenwood*, 486 U.S. 35, 40-41 (1988); (3) a defendant is caught with or near a container of contraband and denies that the container or its contents are his, *see United States v. Veatch,* 674 F.2d 1217, 1220-1221 (9th Cir. 1981); *Bond v. United States*, 77 F.3d 1009, 1013 (7th Cir. 1996).

Defendant was initially observed seated in the back seat of the Nissan. After he and the other occupants were asked to step out of the Nissan, a pair of folded jeans was discovered on the back seat, examined and found to contain nothing. Defendant and the others were later allowed back into the Nissan to keep warm. Defendant again sat in the back seat. Defendant discarded a cigarette butt through a slightly open driver-side back window. BPA Agudio went to the driver-side back door, opened it, and instructed Defendant to pick up the cigarette butt. Defendant deferred, stating that he would pick it up later. Defendant was seen attempting to conceal baggies containing blue pills in the folds of the jeans that had been previously inspected. Before stepping out of the vehicle, presumably to pick up the cigarette butt he had discarded, Defendant handed the jeans with pills concealed to the front-seat passenger, Taylor.

Defendant was not attempting to flee at the time he handed Taylor the jeans with the

pills concealed therein. Defendant had not discarded the jeans and its contents in a receptacle accessible to the public, conveying a belief he no longer cared what became of his trash. Defendant never denied holding the pair of jeans and its contents. Defendant's subjective and reasonable expectation of privacy in the jeans and its contents is evidenced by the fact that Defendant sought to conceal the pills within the jeans and handing them to Taylor: an enfeebled attempt to put momentary distance between himself and that which he is charged with possessing until he anticipated returning to the confines of the Nissan, once he had picked up the cigarette butt. Defendant did not abandon the plastic baggies containing the blue pills in the jeans.

### 2.   **Search and Seizure**

The Fourth Amendment does not require a warrant for a routine stop and search conducted at the "functional equivalent" of a border, otherwise known as a border search exception. *Almeida-Sanchez v. United States*, 413 U.S. 266, 272-73 (1973). A vehicle and its occupants may be selectively referred to a secondary inspection checkpoint for questioning without individualized suspicion. *United States v. Martinez-Fuerte*, 428 U.S. 543, 563 (1976); *see also United States v. Sutter*, 340 F.3d 1022, 1024-1027 (9th Cir.)(vehicle referred to secondary inspection checkpoint under border search exception), *amended by* 348 F.3d 789 (9th Cir. 2003); *United States v. Wilson,* 7 F.3d 828, 833 (9th Cir. 1993) ("A vehicle may be stopped at permanent immigration checkpoints for brief initial questioning and referred to a secondary inspection area for further questioning 'in the absence of any individualized suspicion.'") (*quoting Martinez-Fuerte,* 428 U.S. at 562).

"[A]t traffic checkpoints removed from the border and its functional equivalents, officers may not search private vehicles without consent or probable cause." *United States v. Ortiz*, 422 U.S. 891, 896-97 (1975); *see also United States v. Koshnevis*, 979 F.2d 691, 695 (9th Cir. 1992)(search of trunk of defendant's vehicle by border patrol valid because of probable cause based upon defendant's nervousness, inconsistent statements, and lies).

Herein, Border Patrol was authorized to direct the driver of the Nissan to the secondary inspection checkpoint without individualized suspicion. Nonetheless, BPA

1 Sturkie, in fact, had individualized suspicion: his canine responded to the potential presence
2 of concealed humans or narcotics in the Nissan. The driver was directed to secondary
3 inspection. The occupants, including Defendant, were asked to step out of the Nissan.
4 Information from each was obtained to run a records check on each and the Nissan. While
5 awaiting the return of the records check, consent to search the vehicle was obtained from the
6 driver. A thorough search of the passenger compartment and trunk of the Nissan was
7 conducted, including an inspection of jeans found on the back seat of the Nissan where
8 Defendant had been sitting.

9 BPA Agudio found marijuana residue on the back-seat floor of the Nissan and both
10 BPAs Agudio and Sturkie also noted the odor of burnt marijuana. The occupants were asked
11 if anyone had been smoking marijuana and Defendant volunteered they all had been smoking
12 marijuana earlier that day. The amount of marijuana residue was insufficient for testing and
13 none would be charged with a drug offense related to the marijuana. While awaiting the
14 records check, Defendant and the other two were permitted to get back into the vehicle to
15 keep warm. The testimony is clear that when the three returned to the car, consent had not
16 been withdrawn and the agents' inquiry was still ongoing. The three were permitted to get
17 in the car simply because it was cold outside.

18 While sitting in the back seat as he had before, Defendant drew needless attention to
19 himself by throwing out a cigarette butt and littering the secondary inspection checkpoint
20 area. This prompted BPA Agudio to open the driver-side back door and instruct Defendant
21 to pick up the cigarette butt. Defendant's verbal response was that he would get it later. This
22 struck BPA Agudio as odd given that Defendant was simply sitting there. This encounter
23 gave rise to BPA Agudio's subsequent probable cause.

24 BPA Agudio saw Defendant attempting to conceal a number of plastic bags
25 containing pills in the folds of the jeans he had previously inspected and found void of items.
26 Based on his experience, he surmised that the pills were packaged for sale other than over
27 the counter. He asked Defendant what he had in his hands, or what he was doing. Before
28 stepping out from the driver-side back door, Defendant handed the jeans with the pills to the

1 front-seat passenger away from BPA Agudio's position. The front-seat passenger then
2 handed the pair of jeans and its contents to BPA Agudio. The contents were later counted
3 and determined to be 573 Oxycodone pills by the pill markings with use of the WebMD Pill
4 Identifier. (Sturkie at pp. 12-13).

5 Probable cause exists to search a vehicle "where the known facts and circumstances
6 are sufficient to warrant a man of reasonable prudence in the belief that contraband or
7 evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996).
8 Probable cause is "a fair probability that contraband or evidence of a crime will be found"
9 and is evaluated in light of the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213,
10 238 (1983).

11 BPA Agudio had probable cause to seize the pills based upon the totality of the
12 circumstances known to him: (1) the canine responded to the presence of concealed persons
13 or narcotics in the Nissan; (2) Defendant was sitting in the back seat of the Nissan; (3) after
14 Defendant stepped out of the Nissan, a thorough search of the Nissan produced marijuana
15 "shake" on the floor of the Nissan where Defendant had been sitting; (4) jeans in the back
16 seat were found, examined, and determined to be void of items; (5) Defendant admitted that
17 he had smoked marijuana earlier that day; (6) Defendant returned to the Nissan back seat;
18 (7) BPA Agudio observed Defendant throw a cigarette butt out the driver-side back door
19 window; (8) BPA Agudio opened the driver-side back door and instructed Defendant to pick
20 up the cigarette butt with Defendant stating he would do it later; (9) BPA Agudio thought this
21 odd inasmuch as Defendant was simply sitting in the back seat. The Court can only conclude
22 that Defendant was unaware or unprepared for BPA Agudio opening the driver-side back
23 door and ordering him to pick up the cigarette butt, by his haste and preoccupation with
24 hiding the pills in the jeans as evidenced by: (10) Defendant seen with a number of plastic
25 baggies containing pills, in his hands, attempting to conceal them in the folds of the jeans;
26 (11) since no other drugs were found in the Nissan, Defendant must have had the pills on his
27 person when he had stepped out of the Nissan; (12) BPA Agudio surmised, based upon his
28 experience, that the pills were bagged for other than over-the-counter sale; (13) no

1  prescription bottles had been found in the vehicle; and (14) before stepping out of the Nissan
2  empty-handed, Defendant handed the jeans with the pills to Taylor: away and diametric to
3  BPA Agudio's position and view.

## III. CONCLUSION

The search of the vehicle was based on consent given by the driver-owner of the Nissan and resulted in no forensically valuable evidence. Thereafter, Defendant's conduct did not suggest abandonment of the jeans containing the pills. Defendant's conduct did give rise to sufficient probable cause to seize the pills.

## IV. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court: (1) deny Defendant's Motion To Suppress (4th Amendment Illegal Search and Seizure) (Doc. 28) and Defendant's supplemental Motion To Suppress (4th Amendment Illegal Search and Seizure) (Doc. 48); and (2) deny Defendant's Motion To Suppress (5th Amendment, *Miranda* Violation) (Doc. 29) as moot.

Pursuant to 28 U.S.C. §636(b), Rule 59 of the Federal Rules of Criminal Procedure, LRCrim 12.1 and LRCiv 7.2(e)(3), any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. If objections are filed, the parties should use the following case number: **CR 12-1105-TUC-CKJ.**

Failure to file objections in accordance with Fed.R.Crim.P. 59 will result in waiver of the right to review.

DATED this 31st day of August, 2012.

_____
Héctor C. Estrada
United States Magistrate Judge